61 So.2d 318 (1952)
FLYNN
v.
McGINTY.
Supreme Court of Florida, Special Division B.
November 4, 1952.
Sheldon A. Lindsey and R.M. Cargell of Lindsey & Cargell, St. Petersburg Beach, for appellant.
B.M. Skelton and Paul C. Johnson, St. Petersburg, for appellee.
FABISINSKI, Associate Justice.
The judgment appealed from was entered consequent upon a directed verdict in favor of appellee (plaintiff below) in an action for commissions as a real estate broker.
The appellant came to the office of appellee as a total stranger, and offered a listing covering the property described in the written agreement hereinafter set out at length. Appellee dictated the form of agreement while appellant waited. When the typewritten form was ready appellant read it, and signed it in the presence of witnesses. The agreement is under seal. It is as follows:
"To Jim McGinty, Broker:
"In consideration of your endeavor to procure a purchaser for the property described herein, which is made a part of this contract, the undersigned grants you the exclusive right for a period of 90 days to sell said property at the price and upon the terms stated hereon or at any other price and terms to which I may consent, and in the event of sale of said property by myself or through your instrumentality or any other person *319 during the term of this contract, I agree to furnish an abstract of title showing good and merchantable title in me and to execute deed conveying title or contracts in accordance with said terms and to pay you a coomission of 7 1/2 per cent of the selling price, and I further agree to assist and cooperate in such sale. The exclusive privilege is granted to place your sign on this property and to remove all other signs thereon. The price of this property can not be raised by the owner nor the terms made more severe without first giving you 30 days written notice.

"Description of Property: Penguin Club at Sunset
 Beach and Property.
"Price: $48,000.00 Net Will sell business Rest. &
 Bar for $23,500, lease
 build. for $300. mo.
"Terms: Cash Will pay commission
"Date: June 12, 1947 Jack Flynn (Seal)
 (Seal)
"Witnesses:
 Lou Ina Bates 
 Wm. N. McDevitt
"Accepted:
 Jim McGinty" 

The circumstances surrounding the execution of the agreement are recited in the evidence without conflict. The appellant did not testify. There is some contention made in the briefs of appellant, and in oral argument, that there was no meeting of the minds of the parties; in view of the testimony, this contention is wholly untenable. About the only basis for any such contention is that in his testimony at the trial, the appellee called the instrument an "exclusive listing", instead of an "exclusive right to sell", but he made it clear in other testimony that he expected to receive his commission regardless of whether he, the appellant, or some one else sold the property. We are satisfied that in using the term "exclusive listing" he was merely using his own style of professional "lingo", and was in no sense interpreting the legal effect of the agreement.
The agreement was executed on a Thursday. On the following Sunday appellee inserted a classified advertisement offering the property for sale, in a local newspaper, at an expense to him of about $2. This was the only effort made by him to secure a purchaser for the property. Indeed, he was given no further opportunity to do so, as appellant, the owner, himself negotiated a sale of the property, at the price of $43,000, on the next day. The purchaser had not seen the advertisement, so he says, and we will assume that he did not. On that day, or shortly thereafter, appellee learned of the sale, and made no further effort to make a sale of the property.
On the basis of these facts, a verdict was directed by the Court below for $3,225, the full commission of 7 1/2 per cent on the sale price. We hold that his action in so doing was entirely correct. The ruling was foreshadowed by the decision of this Court in South Florida Farms Company v. Stevenson, 84 Fla. 235, 93 So. 247, 253, 254.
In that case, as here, the Court below interpreted the contract to give to the real estate broker the right to his compensation, even though a great part of the real property listed was sold directly by the owner, and not by the broker. Two members of the Court, Justices Browne and Taylor, agreed with the trial court but on the theory that the contract was one of employment and not a brokerage contract. Justice West, concurring to make up the majority, could not find in the contract unequivocal provisions granting to the agent the exclusive right to sell, but recognized the right of the parties to enter into such a contract, if they so desired, and that it would be enforceable.
As may be readily gathered from the dissenting opinion of Justice Browne, he and Justice Taylor found the rather complicated agreement in that case "a model of clearness and conciseness"; and as construed by the trial Judge "a harmonious whole, needing no interpolations, no eliminations"; and that the construction so placed upon it "the obvious one, * * * the only fair one". On the other hand the majority failed to find in the contract any provision giving to the agent the "exclusive right to sell" the property involved; and indeed one will look in vain for any unequivocal provision of that nature in the contract.
*320 In the instant case there can be no doubt as to what the parties meant by their agreement. It is plainly and unequivocally stated that commission will be earned whether the property was sold "by myself, or through your instrumentality or any other person". These words leave no room for construction or interpretation.
Cases from other jurisdictions are practically unanimous in enforcing agreements such as the one here involved. The cases collected under Note 56, 9 C.J., Brokers, Sec. 101, page 622, have been examined, and are all in accord with the ruling of the Court below. True, some of the cases place the right to relief on the ground of breach of an executory contract, but find the measure of damages to be substantially the same in either event. We have cited Corpus Juris rather than Corpus Juris Secundum because the cases there collected bear directly upon the issue here raised. But the later cases have not altered the rule, and this is best demonstrated in two Texas cases in which the Court carefully reviewed the authorities, in one instance finding an "exclusive agency to sell", and in the other an "exclusive right to sell", denying relief in the first instance, and affirming judgment for the broker in the latter. In neither of these cases was the contract as certain and unequivocal as the one here considered.
In Baker v. Skipworth, Tex.Civ. App., 244 S.W.2d 299, the Court said at page 300:
"We are of the opinion that the disposition of this case is controlled by a well settled principle. A clear distinction is drawn between the appointment of a broker as an `exclusive agent to sell' and the granting to him the `exclusive right to sell.' In the former contract, the owner does not surrender his own right to sell the property and in the event he does so, is under no obligation to pay a commission to the broker. In the latter case, the broker is entitled to his commission if owner makes sale during the life of the contract. This distinction seems to be valid, based on sound reasoning and is abundantly supported by the authorities. In fact we find no case asserting a contrary rule."
See also Lewis v. Smith, Tex.Civ.App., 198 S.W.2d 598.
The Florida cases cited by appellant are not in point, since the forms of agreement in those cases were altogether different. The case of Wiggins v. Wilson, 55 Fla. 346, 45 So. 1011, was cited with approval in South Florida Farms Co. v. Stevenson, discussed above, but in that case the majority of the Court failed to find an unequivocal provision for an "exclusive right to sell".
But appellant contends that even if an exclusive right to sell is granted, there was no consideration for the agreement, or that the consideration failed, because the appellee exerted no substantial efforts to sell the property, and at most could demand only the money he expended for the advertisement. This contention, too, cannot be sustained. See Novakovich v. Union Trust Co., 89 Ark. 412, 117 S.W. 246, 247, wherein the Court, discussing consideration for such a contract, says:
"The contract sued upon is a valid contract. It was based upon mutual and dependent promises  on one side to employ and on the other to serve; and the trust company in good faith undertook to perform its part. The consideration was sufficient. According to the terms of it the trust company had the sole agency of sale of the property for three months after the date of the contract, and thereafter until notified by appellants in writing of its withdrawal from sale, and if it was sold within that time, no matter by whom, was entitled to a commission of $225."
Affirmed.
SEBRING, C.J., and ROBERTS, and MATHEWS, JJ., concur.