526 So.2d 685 (1988)
RICHLAND GROVE & CATTLE CO., INC., etc., Petitioners,
v.
Tom EASTERLING, Respondent.
No. 70523.
Supreme Court of Florida.
May 19, 1988.
Rehearing Denied July 12, 1988.
A.P. Gibbs of Gibbs, McAlvanah & Parnell, P.A., Dade City, for petitioners.
Charlie Luckie, Jr. of McGee, Luckie & Tyner, a div. of Dayton, Sumner, Luckie & McKnight, P.A., Brooksville, for respondent.
OVERTON, Justice.
This is a petition to review Richland Grove & Cattle Co., Inc. v. Easterling, 505 So.2d 451 (Fla.2d DCA 1987), in which the district court certified the following question as one of great public importance:

*686 WHEN A REAL ESTATE BROKER'S CONTRACT DOES NOT PROVIDE A TIME WITHIN WHICH IT IS TO BE PERFORMED, AND THE LAW IMPLIES PERFORMANCE WITHIN A REASONABLE TIME, IS THE QUESTION OF WHETHER PERFORMANCE OCCURRED WITHIN A REASONABLE TIME NORMALLY ONE OF LAW OR FACT?
Id. at 454. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We find the question is one of law when, as in this case, the broker did not contact the seller concerning the specific property for a period of two and one-half years. That circumstance requires a finding that the contract was abandoned. We hold that no commission is due and we quash the decision of the district court.
This cause was commenced when the respondent, Tom Easterling, a real estate broker, filed a complaint against Richland Grove & Cattle Co., Inc., to recover a real estate broker's commission on the sale of a citrus grove belonging to that company. The Richland Grove Company is owned by the O'Berry family and C. Wynn O'Berry is president. In late 1979, O'Berry entered into an open, verbal listing of the grove property with Easterling. In November, 1980, Easterling produced a prospective purchaser, whose offer was refused by O'Berry. In May of 1983, O'Berry sold the property to Floyd Philmon and his wife.
At trial, Floyd Philmon testified that he had learned of the property from his son, a school teacher, who had been told about the property by a fellow teacher who also worked as a real estate associate for Easterling. The senior Philmon approached O'Berry directly about the property and advised him that he had had no contact with any broker. O'Berry testified that at the time he talked to Philmon he had had no contact with Easterling about this specific property from November of 1980 to May of 1983, and felt he no longer had the property listed with Easterling since he believed Easterling had abandoned his listing.
Easterling testified that he had been showing the property during the two and one-half year period from November, 1980, to May, 1983; that he discussed it with his sales personnel and real estate agents from other offices; that he had contacted O'Berry about a man from Tampa who wanted to take half the property but couldn't remember whether that offer had taken place before or after November, 1980; and that he saw O'Berry regularly on social occasions and thought he had mentioned the property to him at those times. On cross-examination, he testified that from November, 1980, until May, 1983, he "might or might not have" contacted O'Berry about this specific piece of property. In May, 1983, Easterling made a demand for a commission because he believed the listing contract was still valid and his salesperson had informed the son of the purchaser about the property and, therefore, was the procuring cause of its sale.
The trial court found that the facts were in dispute and submitted the issue of abandonment to the jury. The jury found for the broker and a judgment was entered accordingly. On appeal, the Second District affirmed in a split decision. The majority opinion acknowledged that after November, 1980, "while appellee and O'Berry remained personal friends and had contact nearly every week, there was no further contact specifically regarding the property until May, 1983," but concluded that "because there is support for the trial judge's finding that there existed disputed facts, the issue of abandonment of the contract by reason of the lapse of a reasonable amount of time was properly submitted to the jury." 505 So.2d at 453-54. The dissent concluded that this thirty-month period clearly represented an abandonment as a matter of law because "[t]here is no dispute over the fact that appellee did not specifically contact appellant concerning the property from November of 1980 until May of 1983." 505 So.2d at 455 (Grimes, J., dissenting). It relied on our decision in Shuler v. Allen, 76 So.2d 879 (Fla. 1955), which found that a seventeen-month gap constituted abandonment, and the decision in Wilkins v. W.B. Tilton Real Estate and *687 Insurance, Inc., 257 So.2d 573 (Fla. 4th DCA 1971), which determined that a nineteen-month gap constituted abandonment.
We find that our decision in Shuler v. Allen is controlling. In that case, the sellers had orally listed a hotel for sale with a broker at a price of $100,000, with $50,000 to be paid in cash and the balance to be represented by a mortgage or mortgages. In July of 1951, prospective purchasers from South Carolina made an offer to purchase the property for $90,000 with $45,000 to be paid in cash and the balance secured by mortgages. The Shulers rejected the offer, stating that they would accept no less than $100,000. From the fall of 1951 until March of 1953, the broker testified that he had periodic conferences with co-brokers and prospective purchasers, but he admitted that from October, 1951, until the property was sold in March, 1953, the sellers were unaware of his continuing negotiations with the prior prospective purchaser from South Carolina. In March of 1953, the party from South Carolina purchased the property on different terms and conditions than those which were originally listed. We held that, although the property was sold to the same prospective purchasers, no commission was due given the broker's abandonment of the contract for failure to contact the owner over a seventeen-month period. We determined that the trial court should have directed a verdict for the seller, stating:
The law is well settled that where the contract of employment between a seller and the broker does not contain a time within which the service is to be performed, the parties intended that such service should be accomplished within a reasonable time. It is further clear from the authorities that the question of whether the time consumed is a reasonable time is one of law where the facts are undisputed. It is only in those cases when facts extrinsic to the contract are in dispute that it becomes a question for the determination of the jury. In this instance, taking the testimony most favorable to the plaintiff, a period of time from October, 1951 to March, 1953 elapsed before the sellers finally sold the property, during which time, so far as the sellers knew, the broker had taken no steps whatever to further negotiate with the purchasers who had tendered a contract which had been rejected or anyone else.
The sellers in this instance and under the facts in this case had the right to assume that the broker had abandoned his efforts in connection with the sale of this property to the purchasers.
Id. at 882 (citations omitted). We emphasized the importance of communication between the broker and the seller concerning any efforts to procure a sale of the property.
We also emphasized that the broker must procure a purchaser within a reasonable time, quoting with approval a portion of the decision in Parkey v. Lawrence, 284 S.W. 283 (Tex.Civ.App. 1926), where the court stated:
If the broker voluntarily abandons his efforts, once begun, to find a purchaser for property, or fails to find one within a reasonable time, all without the fault of the owner, then his contract of employment is at an end, and thereafter the owner is at liberty to sell the property to any one, including the purchaser first found by the broker, either by means of negotiations directly with the purchaser or through the medium of another broker.
Id. at 287 (emphasis added). The Fourth District Court of Appeal in Wilkins v. W.B. Tilton Real Estate and Insurance, Inc., 257 So.2d 573 (Fla. 4th DCA 1971), acted consistently with our decision in Shuler by holding that the broker abandoned the listing contract because the broker failed to contact the owner for nineteen months even though the broker had continued to show the property. The district court recognized the established law that when no time period was orally specified for the listing, the listing "does not give rise to a `brokerage in perpetuity.'" Id. at 575. The dispositive factor in both Shuler and Wilkins is that no communication occurred between the broker and the seller for an extended period of time. The fact that the *688 broker engaged in other activities to procure a sale was not controlling.
We find no real distinction between Shuler and the instant case. Easterling's purported showing of the property to other purchasers and discussions with other real estate agents does not negate the abandonment of this listing contract with O'Berry because Easterling failed to contact O'Berry specifically concerning the property for a period of thirty months. Easterling has not met his burden in this case of demonstrating that he had contact with Richland Grove concerning the specific property to keep the listing contract alive. His uncertainty about whether he discussed the specific property with O'Berry at social gatherings they both attended on a regular basis is insufficient to prove that contact occurred, especially given O'Berry's denial of any contact concerning the specific property during that time. The record clearly demonstrates that the broker has failed to show that the listing contract continued in existence, and, consequently, the conclusion of the district court of appeal that there was no contact specifically regarding the property until May of 1983 was proper. Given that fact, we find that the contract was abandoned as a matter of law and we reject the conclusion that other disputed facts make the question one of fact for the jury.
Accordingly, we quash the majority decision of the district court, approve the dissent, and approve Wilkins v. W.B. Tilton. The district court is directed to remand to the trial court to vacate the judgment and to enter a judgment in accordance with the views expressed in this opinion.
It is so ordered.
McDONALD, C.J., and EHRLICH, SHAW and BARKETT, JJ., concur.
KOGAN, J., dissents.